## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**LARRY SIMS**                                                    **CIVIL ACTION**

**VERSUS**                                                          **NO. 07-967**

**BURL CAIN, WARDEN**                                  **SECTION "K"(5)**

### REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  For the reasons set forth below, it is recommended that the instant petition be **DISMISSED WITH PREJUDICE**.

### PROCEDURAL HISTORY

On November 3, 2000, petitioner, Larry Sims, presently incarcerated in the Louisiana State Penitentiary, Angola, Louisiana, was charged, via bill of information, with four counts

of armed robbery, all occurring on October 19, 2000.  In count one,
Sims, along with co-defendants Floyd Falkins and Dwayne Sims, was
charged with the armed robbery of Lorna Moore.  In count two, Sims
and his co-defendants were charged with the armed robbery of
Kenyatta Bush.  Count three charged the three defendants with the
armed robbery of Betty Higgins, and count four charged that
defendants had committed armed robbery against Mary Dominque.[1]  On
May 7, 2002, Sims proceeded to trial in the Twenty-Fourth Judicial
District Court for the Parish of Jefferson and was found guilty as
charged on all four counts the following day.  On May 30, 2002,
Sims was sentenced to 99 years imprisonment without the benefit of
parole, probation or suspension of sentence on each count, with
each count to run concurrently.  On July 11, 2002, pursuant to the
State's multiple bill, the trial court conducted a hearing,
following which, the court determined Sims to be a second-felony
offender, vacated his original 99-year sentence on count one and
resentenced him to 110 years without benefits and ordered that his
enhanced sentence run concurrently with the sentences he was
presently serving.

On April 29, 2003, the Louisiana Fifth Circuit Court of
Appeal, in connection with Sims' direct appeal, affirmed his

---

[1]A copy of the pertinent bill of information is contained in
the State rec., vol. 1 of 8.

convictions.  The appellate court, however, vacated Sims' sentences as to counts two, three, and four, remanding the matter to the trial court for resentencing due to the trial court's failure to observe the sentencing delays set forth in LSA-C.Cr.P. art. 873. State v. Sims, 845 So.2d 1116, 1122-1123 (La. App. 5 Cir. 2003).[2]

On June 5, 2003, the trial court resentenced Sims on counts two and three to serve concurrent 99-year terms of imprisonment on each count, but failed to resentence Sims on count four.[3]  On this same date, Sims filed a writ application with the Louisiana Supreme Court, seeking relief in connection with the Louisiana Fifth Circuit's April 29, 2003 adverse decision.  On August 20, 2004, the Louisiana Supreme Court denied Sims' writ application.  State ex rel. Sims v. State, 882 So.2d 570 (La. 2004).

On October 22, 2004, Sims commenced pro se post-conviction proceedings, claiming that he was denied effective assistance of counsel, he was denied his right against self-incrimination, and his statements to police were wrongfully admitted at trial.  On

---

[2]Because Sims' original sentence on count one was vacated at the multiple offender hearing, the appellate court determined that the trial court's failure to comply with the required time delay in connection with petitioner's original sentence on count one was harmless and did not remand the matter for resentencing with respect to count one.

[3]A copy of the transcript of Sims's June 5, 2003 resentencing is contained in the State rec., vol. 8 of 8.

November 5, 2004, the state district court denied Sims' post-conviction application.  On February 24, 2006, the Louisiana Fifth Circuit Court of Appeal, finding "no error in the trial court's ruling of November 5, 2004," likewise denied Sims relief.  Sims v. State, No. 2006-KH-108 (La. App. 5 Cir. 2006) (unpublished opinion).[4]  Finally, on December 15, 2006, the Louisiana Supreme Court denied Sims' writ application.  State ex rel. Sims v. State, No. 2006-KH-1190, 944 So.2d 1280 (La. 2006).

On January 8, 2007, Sims filed the instant action for federal habeas corpus relief, challenging the constitutionality of his convictions because he was allegedly denied effective assistance of counsel, denied his right against self-incrimination, and his statements to police were improperly admitted at trial.  In its initial Response (rec. doc. 10), the State contended that Sims' habeas petition was untimely.  The Court, however, rejected the State's contention and ordered the State to file a supplemental response. (Rec. doc. 14).  In its supplemental response (rec. doc. 17), the State asserted and Sims, in his response (rec. doc. 18), did not dispute, that Sims had a writ application pending before the Louisiana Fifth Circuit Court of Appeal.[5]  In light of this

---

[4]Vol. 7 of 8.

[5]The State explained that Sims was one of a number of criminal defendants who filed writ applications in the Louisiana Supreme

fact, along with the fact that the state district court, in its June 5, 2003 proceeding, had failed to resentence Sims with regard to his count four conviction, the Court, on March 12, 2009, ordered that the above-captioned matter be stayed and administratively closed and reserved Sims' right to reopen this action within 30 days after the resolution of his pending state court proceedings. (Rec. doc. 19).

With regard to Sims' pending writ application, the Louisiana Fifth Circuit Court of Appeal, on October 1, 2009, reconsidered Sims' pro se writ application filed under docket number 2006-KH-108 and determined "there was no error in this Court's previous ruling on relator's Writ No. 06-KH-108." State ex rel. Sims v. State, 2008-WR-987 (La. App. 5 Cir. 2009) (unpublished opinion).[6]   On October 21, 2009, Sims filed a writ application, 2009-KH-2382, with the Louisiana Supreme Court seeking relief in connection with the

_____

Court challenging the Louisiana Fifth Circuit Court of Appeal's denial of their pro se writ applications, generally arguing that the internal operating procedures of the Louisiana Fifth Circuit deprived them of legal review of their claims.  Sims' writ application was filed under Louisiana Supreme Court docket number 2008-KH-1834.  On October 10, 2008, the Louisiana Supreme Court transferred Sims' writ application to the Louisiana Fifth Circuit Court of Appeal for consideration and the matter was presently pending before the state appellate court.

[6]A copy of the Louisiana Fifth Circuit's October 1, 2009 unpublished opinion is contained in the State rec., supplemental vol. 4 of 4, as an attachment to Sims' writ application to the Louisiana Supreme Court in No. 2009-KH-2382.

state appellate court's October 1, 2009 adverse decision.  However, in his writ application to the Louisiana Supreme Court, Sims added a new claim which was not part of his initial pro se writ application, 2006-KH-108, which the Louisiana Fifth Circuit had reconsidered pursuant to its October 1, 2009 decision, 2008-WR-987. In addition to his original claims, that he had been denied effective assistance of counsel, that his right against self-incrimination had been violated, and that his statements to police were wrongfully admitted at trial, Sims added a fourth claim, that his convictions on the charges of committing armed robbery against Kenyatta Bush and Lorna Moore were unconstitutional because there was no evidence submitted at trial to support these convictions.[7] On October 8, 2010, the Louisiana Supreme Court denied Sims' writ application.  State ex rel. Sims v. State, 2009-KH-2382, 46 So.3d 1262 (La. 2010).

With regard to the fact that Sims had not been resentenced on his count four conviction, the state district court, on May 19, 2009, resentenced Sims on count four to a term of 99 years imprisonment to be served without benefit of parole, probation or suspension of sentence, to run concurrently with his other

---

[7]A copy of Sims' writ application, 2009-KH-2382, is contained in the State rec., supplemental vol. 4 of 4.  Sims' added claim is set forth on pp. 20-21.

sentences, and with credit for time served.[8]  Shortly thereafter, Sims filed a pro se motion for appeal, along with a motion to quash, complaining that his right to due process had been violated as a result of the excessive delay in resentencing him with respect to his count four conviction.[9]  On June 11, 2009, the state district court issued an order granting the appeal motion and denying the motion to quash on procedural grounds.[10]  On July 31, 2009, counsel filed on Sims' behalf a brief with the Louisiana Fifth Circuit Court of Appeal in connection with his appeal, No. 2009-KA-509.  The issues raised in Sims' appellate brief were that the district court erred in denying Sims' motion to quash based upon the excessive delay in resentencing him and that the district court imposed an excessive sentence.[11]  On February 12, 2010, the Louisiana Fifth Circuit issued an opinion rejecting Sims' arguments and affirming his May 19, 2009 resentencing.  State v. Sims, No. 09-KA-509, 33 So.3d 340 (La. App. 5 Cir. 2010).

On March 7, 2010, Sims filed a pro se writ application, No. 2010-KO-596, with the Louisiana Supreme Court seeking relief in

---

[8]State rec., supplemental vol. 3 of 4, p. 116 and pp. 129-131.

[9]State rec., supplemental vol. 3 of 4, pp. 117-119 and 121-124.

[10]State rec., supplemental vol. 3 of 4, p. 127.

[11]A copy of Sims' appellate brief is contained in the State rec., supplemental vol. 3 of 4.

7

connection with the state appellate court's adverse February 12, 2010 opinion.  In his supporting brief, Sims reiterated the claims raised before the appellate court, that the delay in resentencing him was excessive and that the 99-year sentence imposed was excessive.   Sims, however, added a third claim, that his convictions on the charges of committing armed robbery against Kenyatta Bush and Lorna Moore were unconstitutional because no evidence was presented at trial to support these convictions.[12]  On October 8, 2010, the Louisiana Supreme Court denied Sims' writ application.   State v. Sims, No. 2010-KO-596, 46 So.3d 1264 (La. 2010).

On November 15, 2010, Sims filed with this Court a motion requesting to reopen the above-captioned action (rec. doc. 20) and a motion requesting to file an amended and supplemental habeas petition (rec. doc. 21).  On November 22, 2010, the Court issued an Order (rec. doc. 22) granting Sims' motions and directing the State to file a response on or before February 14, 2011.

In his amended and supplemental petition (rec. doc. 23), Sims sets forth the following claims: 1) he was denied effective assistance of counsel; 2) he was denied his right against self-

---

[12]A copy of Sims' supporting brief in his writ application, No. 2010-KO-596, to the Louisiana Supreme Court is contained in the State rec., supplemental vol. 4 of 4.  Sims' added claim is set forth on pp. 9-11.

incrimination when police continued to question him after he invoked his right to counsel and the trial court improperly admitted his statements into evidence at trial;[13] 3) he was denied due process as a result of the excessive delay associated with his resentencing; 4) the 99-year sentence imposed in connection with his resentencing was excessive; and, 5) his convictions on the charges of committing armed robbery against Kenyatta Bush and Lorna Moore were unconstitutional because no evidence was submitted at trial to support these convictions.[14]  In its response (rec. doc. 24), the State contends that Sims has failed to exhaust his state court remedies.  For the following reasons, the Court agrees.

**EXHAUSTION/PROCEDURAL DEFAULT**

It is well-established that a petitioner must exhaust his available state court remedies before proceeding to federal court for habeas relief.  28 U.S.C. §2254(b)(1)-(3); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982).  As the Supreme Court explained in <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971) (citations and quotations omitted):

> The exhaustion-of-state remedies doctrine ... reflects a policy of federal-state comity, ... an accommodation of

---

[13]Claim 2) represents a consolidation of claims 2 and 3 as set forth in Sims' amended and supplemental habeas petition.

[14]Claim 5) represents a consolidation of claims 4) and 7), as set forth in Sims' amended and supplemental habeas petition.

our federal system designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights.... We have consistently adhered to this federal policy, for it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.

The State asserts that Sims failed to exhaust his state court remedies by virtue of the fact that he only raised claim 5) to the Louisiana Supreme Court, without first having raised the issue before the lower state courts. Sims, in his rebuttal (rec. doc. 25), does not dispute the fact that the above claim was only presented to the Louisiana Supreme Court. However, Sims contends that this was sufficient for purposes of exhausting his state court remedies, suggesting that the Louisiana Supreme Court could have remanded the issue to the lower courts, but instead, adjudicated the matter, denying his writ application. (Rec. doc. 25, p. 3).

In a factually similar case, Mercadel v. Cain, 179 F.3d 271, 273 (5th Cir. 1999), the pro se petitioner raised his post-conviction claim directly to the Louisiana Supreme Court, bypassing the state district and appellate courts. The Louisiana Supreme Court denied petitioner's claim without comment. The United States Fifth Circuit Court of Appeals, however, did not conclude that petitioner had exhausted his state court remedies by virtue of the fact that the state high court did not remand the matter to the

10

lower courts due to petitioner's failure to raise the claim before the lower courts. Instead, the Fifth Circuit determined that because petitioner improperly filed his habeas claim with the Louisiana Supreme Court, bypassing the state district and appellate courts, "he failed to exhaust his state court remedies with respect to that claim." Id. at 275. See also Baldwin v. Reese, 541 U.S. 27, 31-32 (2004) (To exhaust one's state court remedies, a petitioner must properly present each of his federal habeas claims to each reviewing state court.)[15] Thus, Sims, with regard to claim 5), has failed to exhaust his state court remedies.

Related to the exhaustion requirement is the doctrine of procedural default, another separate but distinct limit on the availability and scope of federal habeas review. See Nobles v. Johnson, 127 F.3d 409, 420-423 (5th Cir. 1997), cert. denied, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998).[16] "'A

---

[15]Sims also suggests that because Louisiana appellate courts traditionally perform "an error patent review on direct appeal", the pertinent issue was essentially before the Louisiana Fifth Circuit and was simply overlooked. Sims' suggestion in this regard is absurd. If such were the case, the rule enunciated in Mercadel, supra, and Baldwin, supra, would be obliterated. Louisiana habeas petitioners would routinely be able to bring habeas claims to federal court without first allowing lower state courts to review said claims, thereby undermining the principle of federal-state comity which the exhaustion requirement is intended to promote.

[16]A district court may raise the issue of procedural fault sua sponte provided that the petitioner is given notice. Magouirk v.

procedural default ... occurs when a prisoner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims would now find the claims procedurally barred.'" Bourg v. Prince, 2010 WL 1552723, *3 (E.D. La. March 19, 2010) (Chasez, MJ.), quoting Nobles, 127 F.3d at 420 (additional quotation and citation omitted).

With limited exceptions not applicable here, Article 930.8 of the Louisiana Code of Criminal Procedure provides that no application for post-conviction shall be considered by the state courts if it is filed more than two years after the judgment of conviction and sentence of a defendant have become final.  The Fifth Circuit has determined that Article 930.8 constitutes an independent and adequate state rule that is regularly applied by the state courts.  Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997), cert. denied, 523 U.S. 1125, 118 S.Ct. 1811. 140 L.Ed.2d 949 (1988).

As noted in the procedural history discussed above, at no time did Sims urge before the state district court or state appellate court the claim that his convictions on the charges of committing armed robbery against Kenyatta Bush and Lorna Moore were unconstitutional because no evidence was submitted at trial to

_____

Phillips, 144 F.3d 348, 358 (5th Cir. 1998).  This Report and Recommendation will provide Sims with that required notice.  Id. at 359.

support these convictions.  It would now be too late for him to do so in light of Article 930.8.  Accordingly, habeas review of Sims' claim that his convictions on the charges of committing armed robbery against Kenyatta Bush and Lorna Moore were unconstitutional because no evidence was submitted at trial to support these convictions is barred unless he can establish cause for his procedural default and actual prejudice as a result of the alleged constitutional violation, or if he can demonstrate that the failure to entertain the claim will result in a fundamental miscarriage of justice.  Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Sims has failed to show cause for failing to bring his claim regarding the lack of evidence presented in support of his convictions for the armed robberies of Kenyatta Curtis and Lorna Moore.  No external impediment prevented him from doing so.  See Moore v. Roberts, 83 F.3d 699, 704 (5th Cir. 1996), cert. denied, 519 U.S. 1093, 117 S.Ct. 772, 136 L.Ed.2d 717 (1997).  Without a showing of cause, the Court need not consider the element of prejudice.  See Murray v. Carrier, 477 U.S. 478, 494-495 (1986). Likewise, because Sims makes no showing of actual innocence, he has not demonstrated that a fundamental miscarriage of justice will

occur if his insufficient evidence claim is not considered. <u>Glover</u>, 128 F.3d at 904.[17]

Having disposed of Sims' claim that his convictions on the charges of armed robbery of Kenyatta Bush and Lorna Moore were unconstitutional because no evidence was submitted at trial to support these convictions, the Court now turns to the merits of Sims' other claims that he properly exhausted in the state court system, following its recitation of the facts and standard of review.

**FACTS**[18]

On October 19, 2000 at approximately 9:30 a.m., two men wearing hooded sweatshirts entered the Hibernia Bank at the intersection of Medical Center Blvd. and the Westbank Expressway armed with guns and ordered everyone to lie on the floor. The shorter of the two men, later identified as Sims, remained in the lobby while the taller man, identified by Sims as Floyd Falkins, jumped the teller counter. While behind the teller counter, Falkins put his gun to two of the tellers' heads. He told one of the four tellers, Betty Higgins, to shut up or he would shoot her. Falkins proceeded to take approximately $15,800 from the tellers' drawers. The perpetrators then fled the bank. None of the bank employees could identify the robbers because Sims covered his face with a red bandanna and Falkins covered his face with a black ski mask.

---

[17]Even if Sims were to prevail on the merits of this claim, he received concurrent sentences of ninety-nine years on counts three and four, <u>Williams v. Maggio</u>, 714 F.2d 554 (5th Cir. 1983), <u>cert</u>. <u>denied</u>, 465 U.S. 1035, 104 S.Ct. 1306 (1984), which were as subject to enhancement as count one.

[18]The facts are taken from the Louisiana Fifth Circuit's opinion, <u>Sims</u>, 845 So.2d at 1118-1119.

Meanwhile, Sylvia Bourg was sitting in the parking lot of the Hibernia Bank waiting for her daughter to cash a check inside the bank.  Thinking it was taking her daughter longer than it should, Ms. Bourg exited her vehicle and walked toward the bank.  Two black men wearing hooded sweatshirts exited the bank carrying a bag and crossed the street.  Ms. Bourg noted it was too warm for the men to be wearing sweatshirts.  She then saw red smoke coming out of the bag and realized what had happened.  Ms. Bourg last saw the men in front of the Rite Aid store.  She could not see their faces because they were wearing hoods.

At the same time, Jeanne Pierre was sitting in the Rite Aid parking lot when she saw a man, who was being followed by another man, throw "smoke" into a bush.  The men were wearing hooded sweatshirts. One man was carrying a mask in his hand and the other man had a gun that he was tucking into his pants.  Ms. Pierre saw the two men enter a burgundy Maxima that was parked in the parking lot and was driven by a third man.  The Maxima drove off on the Westbank Expressway toward the Harvey Tunnel but Ms. Pierre managed to get the license plate number which she gave to the police.

Deputy George Giron heard the description of the vehicle over the police radio.  He proceeded to the high rise portion of the expressway to see if he could spot the vehicle.  A vehicle matching the description passed and he stopped the vehicle.  Deputy Giron ordered the driver out of the vehicle and the driver complied.  He then ordered the driver to the rear of the vehicle at which time the driver jumped off the high-rise.  The two passengers, Sims and Falkins, were immediately taken into custody.  The officer observed a weapon protruding from under the front passenger seat and a dye-stained sweatshirt, gloves and bag in the rear of the car.  A search warrant was obtained for the car and yielded a semi-automatic black handgun and a .357 magnum revolver, which the victims identified as being the guns used during the bank robbery, bullets, a black knit ski mask, a red bandanna, a black nylon bag, $15,839.00, three security dye packs, and a blue/gray hooded sweatshirt.

After his arrest, Sims was advised of his rights.  He waived his rights and gave an oral statement to Sergeant Grey Thurman. In his statement, Sims admitted his involvement in the bank robbery. He stated he armed himself with a semi-automatic gun, entered the bank, and ordered the people in the bank to lie down.  He explained he stayed in the lobby while Falkins took the money.  He then stated they left the bank in a car driven by his brother, Dwayne Sims.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. §2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under §2254(d)(1) and questions of fact are reviewed under §2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1). The United States Supreme Court has noted:

> §2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the

16

latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. §2254(e)(1).

**MERITS**

**Ineffective Assistance of Counsel**

The seminal Supreme Court decision regarding ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 668, 697 (1984), wherein the Court held that in order to prove that counsel was ineffective, petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.

Under the deficient performance prong of the Strickland test, "it is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"   Lockhart v. Fretwell, 506 U.S. 364, 371 (1993), citing Strickland, 466 U.S. at 690.   To prove prejudice under the Strickland standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Sims claims that counsel was ineffective in failing to prepare for and present an insanity defense, in failing to obtain an independent examiner to provide an opinion regarding his mental status and in failing to conduct an independent investigation of his history of mental problems.   According to Sims, had counsel investigated, he would have discovered Sims' extensive psychiatric records.[19]

A review of the record reflects that counsel did, in fact, request an evaluation of Sims' mental competency.   On February 7, 2001, defense counsel filed a motion to appoint a sanity commission, asserting that "upon interview, the defendant exhibited

_____

[19]Sims, however, has failed to provide this Court with copies of his alleged extensive psychiatric records.

unusual behavior."[20]  Counsel's motion was granted.  During an April 26, 2001 sanity hearing, both Daliah Bauer, Ph.D. and Anita Snow, M.D., opined that Sims was able to assist counsel and understand trial proceedings.[21]

On May 1, 2002, a second sanity hearing was conducted.  At this hearing, it was stipulated that forensic psychologist, Rafael Salcedo, and forensic psychiatrist, Richard Richoux, would testify in accordance with their expert report wherein they opined that Sims "should be able to continue to meet the Bennett[22] criteria for competency to proceed for the balance of his trial."[23]

On May 7, 2002, prior to the commencement of trial, defense counsel moved to withdraw Sims' plea of not guilty and not guilty by reason of insanity and reinstate his original plea of not guilty.

MR. WILLIAMS:
        Your Honor, Lindsey Williams on behalf of Mr. Sims.
        Judge, pursuant to our pre-trial discussions in the back, at this time I would move to change Mr. Sims' plea from not guilty and not guilty by reason of insanity to

_____

[20]State rec., vol. 1 of 1.

[21]State rec., vol. 5 of 8, pp. 99 and 102.

[22]State v. Bennett, 345 So.2d 1129 (La. 1977).

[23]A copy of the pertinent report is contained in the State rec., vol. 1 of 8.

just a not guilty plea.  Having reviewed and had informal
discussions ... with Dr. Salcedo and considering his last
report[] and my interaction with Mr. Sims in the
courtroom on multiple occasions and a couple of lengthy
meetings at the jail in preparations for his trials which
had been continued previously and again yesterday, it's
not my intention to put on a case of not guilty by reason
of insanity.  I think that that may confuse the jury, and
I am moving to opt out of that -- out of that plea at
this time.

Additionally, Judge, his family has provided me
today with some medications and additionally some -- some
documentation regarding medicines that he was on from the
West Jeff Mental Health Center, and not necessarily being
familiar with the names of those medications, in reading
what their uses are, they seem to be - - all be
antihistamines.  And while I'm not a physician, I - -
would submit that I don't believe that those medications
are the type that would be used for serious mental
illness.  If there's others, I'm currently unaware of
them, and Mr. Sims and his family have been unable to
provide me with any other treatment facilities and/or
doctors' names for me to investigate that situation.

So I would urge that the Court allow me to change
that plea, and pending your ruling, Judge, we would be
ready for trial today.


MR. PACIERA [prosecutor]:

The State has no opposition to the defendant
withdrawing his plea of not guilty by reason of insanity.

I'd also like to indicate for the record that when
we were here - - I think it was last week - - on the last
competency hearing ... Defense counsel and I together had
a conversation with Dr. [Salcedo] ... who had indicated
that while he did not do an examination, per se to
determine whether or not the defendant was insane at the
time of the crime, had he been asked to do so, his
preliminary opinion would have been that the defendant
was not, based upon the - - his examination of the
defendant and what the defendant had told him in
questioning the defendant about the facts of the case, et
cetera.

THE COURT:

    I will allow you to change that plea.[24]

In <u>Ake v. Oklahoma</u>, 470 U.S. 68, 83 (1985), a case relied on by Sims in support of his argument, the United States Supreme Court determined that when a defendant demonstrates that his sanity is at issue, "the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." However, an indigent defendant does not have an automatic right to expert assistance upon demand. <u>Yohey v. Collins</u>, 985 F.2d 222, 227 (5th Cir. 1993). Rather, he must "establish a reasonable probability that the requested experts would have been of assistance to the defense and that denial of such expert assistance resulted in a fundamentally unfair trial." <u>Id</u>.; <u>Griffith v. Quarterman</u>, 2006 WL 2041291, *5 (5th Cir. 2006); <u>see also</u> <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 372 (1993). The <u>Ake</u> Court specifically held that a defendant is not entitled "to choose a psychiatrist of his own personal liking or to receive funds to hire his own." <u>Ake</u>, 470 U.S. at 83. Instead, the Court determined that the indigent defendant only has the right to have access to a competent psychiatrist. <u>Id</u>.

---

[24]State rec., vol. 5 of 8, pp. 165-167.

In the instant case, Sims had two competency hearings and was evaluated by four mental health specialists, all of whom opined that Sims was competent to proceed to trial.  Arguably, counsel had a duty to investigate further, to seek an expert opinion regarding Sims' mental capacity not simply at the time of trial, but also, at the time he committed the armed robberies.  However, even if counsel's performance in this regard is deemed deficient, Sims has failed to show the required prejudice.

In order to show the prejudice required to support his ineffective assistance claim, Sims must establish that he had a "valid insanity defense."  See Wilson v. Butler, 825 F.2d 879, 881 (5th Cir. 1987); see also Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996) ("[I]f there exists no reasonable probability that a possible defense would have succeeded at trial, the alleged error of failing to disclose or pursue it cannot be prejudicial."); Krist v. Foltz, 804 F.2d 944, 946 (6th Cir. 1986) ("An attorney is not required to present a baseless defense or to create one that does not exist."); Morgan v. Cain, 2007 WL 3025056, *7 (E.D. La. Oct. 15, 2007) ("For petitioner to be entitled to relief on [a claim that his trial counsel was ineffective in failing to investigate and pursue an insanity defense], he must demonstrate that there was a reasonable probability that an insanity defense would have had merit."); United States v. Washington, 1997 WL 327459, *2 (E.D. Pa.

June 12, 1997) (counsel is not ineffective in failing to raise a meritless defense, because the outcome of the proceeding would not have been different if the defense had been raised).

That is a daunting task in light of the mental state necessary to support such a defense.  Under Louisiana law, "[a] defendant is presumed sane, and it is he who has the burden of establishing his insanity defense."  State v. Foster, 647 So.2d 1224, 1230 (La. App. 2 Cir. 1994); see also La.Rev.Stat.Ann. §15:432; La.C.Cr.P. art. 652.  Further, an offender's insanity exempts him from criminal responsibility only if his condition rendered him "incapable of distinguishing between right and wrong with reference to the conduct in question."  La.Rev.Stat.Ann. §14:14.  A mental disease or disorder short of legal insanity is insufficient to support an insanity defense under Louisiana law.  State v. Williams, 346 So.2d 181, 186 (La. 1977); State v. Koon, 704 So.2d 756, 768 (La. 1997); see also Morgan, 2007 WL 3025056 at *7.  Moreover, "[b]y its nature, the insanity defense involves case by case determinations of fact and will often fail even if raised and even where some indications of irrationality exist."  McInerney v. Puckett, 919 F.2d 350, 353 (5th Cir. 1990).

In the instant case, Sims has failed to present any evidence demonstrating the viability of an insanity defense.  For example, he has brought forth no evidence indicating (1) that he was in fact

legally insane at the time of the armed robberies or (2) that there were any experts who would have testified at trial in support of an insanity defense.  See Coble v. Quarterman, 496 F.3d 430, 437 (5th Cir. 2007) ("Trial counsel ... testified that no expert would support the insanity defense.  [Petitioner] offered no evidence to the state habeas court that he was insane at the time of the murders. ...  Thus, counsel was not ineffective for failing to present an insanity defense at the guilt/innocent phase of trial since no experts would support the defense.").

Moreover, the evidence indicates that such a defense was not viable.  For example, Sims' conduct during and immediately after the crimes, including covering his face with a bandana to hide his identity and immediately fleeing the scene after the robberies to avoid capture, belies any inference that he was unaware that his conduct was wrongful.  Further, he displayed no psychotic behavior during the crimes or shortly thereafter when he was apprehended and gave his statements to Sergeant Thurman.  Such facts are simply inconsistent with an insanity defense under Louisiana law.  See, e.g., State v. Franklin, 648 So.2d 962, 966-67 (La. App. 5 Cir. 1994).

In the absence of any contrary evidence indicating that Sims was incapable of distinguishing between right and wrong at the time of the robberies, there is simply no basis for concluding that a

reasonable probability exists that the verdict would have been different if only an insanity defense had been asserted. Accordingly, the denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent. Sims is not entitled to habeas corpus relief.

### Denial of Constitutional Rights By Virtue of Interrogation While He Was Under the Influence of Drugs and After Invocation of Right to Counsel/Unconstitutional Admission at Trial of Improperly Attained Statements

Sims argues that his inculpatory statements were not voluntarily given as they were obtained while he was under the influence of prescribed anti-psychotic drugs, i.e., Zyperxa and Wellbutrin, and after he invoked his right to counsel. In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court established procedural safeguards designed to protect the constitutional rights of an accused to be free from compelled self-incrimination during a custodial interrogation. To be able to use statements obtained during a custodial interrogation, the State must warn the accused of his right to remain silent and his right to have counsel, retained or appointed, present during interrogation. Id. at 473.

Miranda further established that once the required warnings are provided to the accused, "[i]f the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the

defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." Id. at 475.  "[T]he determination whether the statements obtained during a custodial interrogation are admissible against the accused is to be made upon an inquiry into the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forego his rights to remain silent and to have the assistance of counsel." Fare v. Michael C., 442 U.S. 707, 725 (citing Miranda, 384 U.S. at 475-477).

Sims further asserts that the trial court erred in admitting these involuntary statements into evidence at trial.  It is well established that federal habeas review is limited to questions of constitutional dimension.  See generally Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992), cert. denied, 508 U.S. 978, 113 S.Ct. 2977, 125 L.Ed.2d 675 (1993); Castillo v. Johnson, 141 F.3d 218, 222 and 224 (5th Cir.), cert. denied, 524 U.S. 979, 119 S.Ct. 28, 141 L.Ed.2d 788 (1998).  In reviewing a state trial court's alleged evidentiary error, such as the instant one set forth by Sims, the federal habeas court's role "'is limited to determining whether a trial judge's error is so extreme that it constituted denial of fundamental fairness.'"  Andrade v. McCotter, 805 F.2d

1190, 1193 (5th Cir. 1986), _quoting_ <u>Mattheson v. King</u>, 751 F.2d 1432, 1445 (5th Cir.1985).

In addressing, on direct appeal, Sims' claim that his statements to police, specifically, to Sergeant Thurman, were not voluntary and the corollary claim that the trial court erred in admitting these statements, the Louisiana Fifth Circuit made the following findings of fact, findings which this Court may presume to be correct:

> Prior to trial, Sims filed a generic motion to suppress all his statements on the basis they were involuntary. A hearing was held which revealed defendant gave three statements to Sgt. Thurman. Sims first gave an unrecorded oral statement and then two subsequent taped statements.
>
> Before talking with Sims, Sgt. Thurman reviewed a Rights of Arrestee or Suspect form with him. Defendant indicated he had difficulty reading so Sgt. Thurman read the form aloud using his finger to follow along the words on the form. Sims initialed each right and then signed in two places indicating he read and understood his rights and that he wished to waive his rights. Sgt. Thurman knew defendant from a prior homicide case where defendant was a witness and felt Sims was capable of understanding and did in fact understand the rights he was waiving. Thereafter, Sgt. Thurman and defendant discussed the incident at which time Sims conveyed the story of what happened. This statement was not recorded.
>
> Sgt. Thurman then obtained a tape recorder and began taking a recorded statement. At the beginning of the first taped statement, Sgt. Thurman again reviewed Sims' rights and referenced the waiver of rights form, which Sims had previously executed. When Sims was asked whether he understood everything on the waiver of rights form, he responded by inquiring into his right to an

attorney.   Sims then stated he was confused and that he wanted an attorney present.

Sgt. Thurman asked if Sims was confused prior to that point and defendant replied in the negative.  Sims stated he was confused now because he was getting sleepy and his medication was making him drowsy.  Sgt. Thurman then asked Sims if he had understood the waiver of rights form 30 minutes earlier when he signed it and Sims indicated that he did.  Sims admitted he did not request an attorney when he signed the waiver of rights form and had not requested an attorney prior to the instant moment.  He acknowledged that he had given Sgt. Thurman a statement after signing the waiver of rights form and before the present recorded statement.   Thereafter, despite having asked twice for an attorney, Sims stated he wanted to "go ahead" and talk but Sgt. Thurman concluded the statement.  Ten minutes later, Sims gave a second recorded statement at the beginning of which Sgt. Thurman again reviewed defendant's rights.   This second recorded statement contained substantive facts regarding the incident.

The trial court granted the motion to suppress any statement given after Sims stated he wanted an attorney present, which occurred on page six of his first recorded statement,  and  denied  the  motion  to  suppress  any statement given prior to that point.   Thus, the trial court ruled Sims' unrecorded oral statement and his first recorded  statement  were  admissible  and  his  second recorded statement was inadmissible.   In finding Sims' first two statements admissible, the trial court reasoned that the written wavier of rights was valid and well-executed and that defendant's waiver of rights at that time was voluntary and knowing.

Sims, 845 So.2d at 1119 - 1120.


Thereafter, the Louisiana Fifth Circuit reasoned:


Sims does not allege that he was not advised of his Miranda rights but rather that he did not knowingly waive them.  The record shows Sgt. Thurman adequately reviewed defendant's  rights  prior  to  interviewing  him.  Sgt.

Thurman was aware Sims had difficulty reading and took care to read the form to defendant. Sgt. Thurman knew defendant from a prior homicide case where Sims was a witness. He stated that in connection with the homicide case, he spoke to Sims at length on numerous occasions. Based on his prior experiences with defendant, Sgt. Thurman believed Sims understood his rights. Sgt. Thurman specifically noted defendant appeared of a "normal nature" and did not appear drugged or drunk.

These facts support the trial court's conclusion that defendant knowingly waived his rights prior to speaking with Sgt. Thurman and giving an unrecorded statement. Additionally, by his own statement, Sims admits he understood his rights at the time he initially waived them. He admitted he did not request an attorney at that time and that he gave an unrecorded statement to Sgt. Thurman. There is nothing in the record that indicates defendant did not understand his rights when he initially waived them or that he was coerced into giving an unrecorded statement.

Sims, 845 So.2d at 1121.

The Court finds that the above determination on the part of the Louisiana Fifth Circuit Court of Appeal does not represent an unreasonable application of Supreme Court law to the facts of this case. Specifically, Sims' Miranda rights were not violated and the trial court did not err in admitting into evidence those statements provided by Sims before he invoked his right to an attorney.

**Excessive Delay Associated with Resentencing**

On April 29, 2003, the Louisiana Fifth Circuit affirmed Sims' convictions, but vacated his sentences as to counts two, three and four and remanded the matter to the trial court for resentencing.

29

Sims, 845 So.2d at 1122-1123.  On June 5, 2003, the trial court resentenced Sims on counts two and three, but failed to resentence Sims on count four.[25]  The trial court did not resentence Sims with respect to count four until May 19, 2009.[26]

Sims claims that his constitutional rights were violated as a result of the delay of over six years in sentencing him with respect to court four.  Sims, however, cites no Supreme Court case, nor has this Court found any such case, providing that he has a constitutional right to speedy sentencing.  Other courts addressing this issue have similarly been unable to find any Supreme Court decisions on point.  See Lewis v. Ducharme, 9 Fed. Appx. 13 (9th Cir. 2001) (unpublished) (habeas relief denied because no Supreme Court cases "squarely holding" that Sixth Amendment's right to speedy trial and Fourteenth Amendment's right to due process applies to delayed sentencings or appeals); Hicks v. Wilkinson, 2011 WL 864844, *8 (W.D. La. Feb. 14, 2011) (Hayes, MJ.), adopted, 2011 WL 867193 (W.D. La. March 10, 2011) (James, J.) ("Petitioner has not cited, nor has the undersigned found, **ANY** United States Supreme Court cases squarely holding that the Due Process Clause of

---

[25]This error was noted in this Court's March 13, 2009 Order. (Rec. doc. 19, pp. 2-3).

[26]See discussion supra at pp. 2-6.

the Fourteenth Amendment guarantees a right to speedy sentencing. [Emphasis original]").

Under the deferential standard of the AEDPA, a habeas applicant is not entitled to relief "with respect to any claim that was adjudicated on the merits in State court ... unless the adjudication of the claim" was based on a decision contrary to "clearly established Federal law, as determined by the Supreme Court of the United States". 28 U.S.C. §2254(d)(1). Because the Louisiana Fifth Circuit's opinion, Sims, 33 So.2d at 342-344, denying the instant claim is not contrary to any Supreme Court precedent, Sims' claim for habeas relief based upon an excessive delay in sentencing is without merit.

Assuming arguendo that a constitutional right to speedy sentencing, as dictated by the Supreme Court, did exist, some showing of prejudice as a result of the delay is typically required to warrant relief. See Hicks, 2011 WL 864844, *9 (when considering a constitutional violation resulting from delay, some showing of prejudice is generally required). Sims has failed to make the requisite prejudice showing. As the Louisiana Fifth Circuit, in rejecting the instant claim, noted:

> [D]efendant does not show how he has been prejudiced by
> the delay in re-sentencing. In this case, defendant's
> multiple armed-robbery convictions had been affirmed and,
> during the six-year delay before re-sentencing on count

four, he was imprisoned on three concurrently-imposed sentences:  110-year enhanced sentence and two 99-year sentences.

In his brief, defendant argues that he was prejudiced by the delay in resentencing because he was "unable to fight the conviction and sentence at a higher court or federal level because all of the procedures available for him to challenge his conviction require that a legal sentence be imposed." We cannot agree that he was unable to seek relief at a higher level because, pursuant to his own writ of habeas corpus filed in federal district court, the district judge discovered the sentencing issue at hand. Therefore, like the Louisiana Supreme Court in State v. Johnson, 363 So.2d 458, 461 (La.1978), we recognize that defendant had a statutory right to imposition of sentence without unreasonable delay, but we decline to address whether a six-year delay was reasonable in this case because the defendant did not suffer any prejudice by the delay.  Id. at 460-61.

Sims, 33 So.3d at 343-344.

**Excessive Sentence**

Sims argues that the 99-year sentence he received in connection with his resentencing on his count four armed robbery conviction was excessive.  Sims complains that the resentencing judge, who did not preside over his trial or original sentencing, imposed the statutory maximum sentence without familiarizing himself with the facts of the case and without providing his reasons for imposing the maximum sentence.

In addressing the issue of whether Sims' 99-year sentence was unconstitutional, the Louisiana Fifth Circuit first examined

applicable state law which essentially mirrors applicable federal law, as follows:

> The Eighth Amendment to the United States Constitution and Article I, §20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even when it is within the applicable statutory range, if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. <u>State v. Warmack</u>, 07-311, p. 7 (La.App. 5 Cir. 11/27/07), 973 So.2d 104, 109.

<u>Sims</u>, 33 So.3d at 344.[27]

The state appellate court added:

> In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the sense of justice. The trial judge is afforded wide discretion in determining sentence, and the court of appeal will not

---

[27]Similarly, as the United States Fifth Circuit explained in <u>United States v. Gonzales</u>, 121 F.3d 928, 942 (5th Cir. 1997), <u>cert</u>. <u>denied</u>, 522 U.S. 1063, 118 S.Ct. 726, 139 L.Ed.2d 664 (1998) and 522 U.S. 1131, 118 S.Ct. 1084, 140 L.Ed.2d 141 (1998), while "[t]he Eighth Amendment prohibits sentences that are grossly disproportionate to the crime ... [t]his constitutional principle is tempered ... by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts." <u>See</u> <u>also</u> <u>Bonner v. Henderson</u>, 517 F.2d 135, 136 (5th Cir. 1975) (if a sentence is in accordance with applicable statutory provisions, a federal habeas court will not upset the terms of that sentence unless it is so disproportionate to the offense as to be completely arbitrary and shocking); <u>Smallwood v. Johnson</u>, 73 F.3d 1343, 1347 (5th Cir. 1996) (federal court will not review a state sentencing without a threshold showing that the sentence is "grossly disproportionate to the offense").

set aside a sentence absent a clear abuse of the trial
court's discretion. <u>State v. Brown</u>, 04-230, p. 4
(La.App. 5 Cir. 7/27/04), 880 So.2d 899, 902.
Accordingly, the relevant question on appeal is whether
the trial court abused its broad sentencing discretion,
and not whether another sentence might have been more
appropriate. <u>State v. Cook</u>, 95-2784, p. 3 (La.5/31/96),
674 So.2d 957, 959, <u>cert</u>. <u>denied</u>, 519 U.S. 1043, 117
S.Ct. 615, 136 L.Ed.2d 539 (1996).

<u>Sims</u>, 33 So.3d at 344.

Thereafter, the Louisiana Fifth Circuit Court of Appeal

reasoned:

Here, defendant's 99-year sentence is the maximum
allowed for armed robbery under La. R.S. 14:64 B.[28]   It
is the same sentence he received from the judge who
presided over the trial.   In this case, defendant
admitted to police that he entered a bank armed with a
semi-automatic weapon. <u>State v. Sims</u>, 02-1224 at 4, 845
So.2d at 1119.   He participated in the robberies of
several bank employees, thereby putting lives at risk.
In addition to the three other counts of armed robbery in
the instant case, defendant had prior convictions for
distribution of cocaine and aggravated battery. <u>Id</u>.,
02-1224 at 2-3, 845 So.2d at 1118.

Immediately after trial, the trial judge sentenced
defendant to four concurrent 99-year sentences for his
four armed robbery convictions.   Due to a procedural
irregularity, we vacated and remanded for re-sentencing.
At the 2003 re-sentencing, the original trial judge, due
to an oversight, failed to re-sentence defendant on one
armed robbery count.   However, that day, the same trial
judge re-sentenced defendant on two other armed robbery
concurrently-sentenced convictions to 99 years, the same

_____

[28]At the time of defendant's offense, the sentencing range for
armed robbery was ten to 99 years at hard labor, without benefit
of parole, probation, or suspension of sentence.   La. R.S. 14:64(B).

length as the original sentence and the maximum allowed under the statute.

We find it probable that the original trial judge, if given an opportunity six years later, would have imposed a 99-year sentence, as he had twice done for each of defendant's prior counts of armed robbery. We believe that the re-sentencing judge could adequately ascertain, as we have, the original judge's sentencing intent with regard to defendant's fourth armed robbery conviction. We find no merit in defendant's argument that his sentence is excessive.

Sims, 33 So.3d at 344-345.

This Court finds that the above determination does not represent an unreasonable application of applicable law to the facts of this case. Accordingly;

## RECOMMENDATION

For the foregoing reasons, it is recommended that the application for federal habeas corpus relief of Larry Sims be dismissed with prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.   28 U.S.C.

§636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415,

1430 (5th Cir. 1996)(<u>en</u> <u>banc</u>).[29]

New Orleans, Louisiana, this <u>15th</u> day of <u>    March    </u>, 2013.


ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE

---

[29]<u>Douglass</u> referenced the previously applicable ten-day period
for the filing of objections.  Effective December 1, 2009, 28
U.S.C. § 636(b)(1) was amended to extend that period to fourteen
days.